UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                        15-cr-113 (PKC)

  -against-                 <u>ORDER</u>

KASINE DELESTON,

    Defendant.

-----------------------------------------------------------x

CASTEL, U.S.D.J.

    Through his counsel, defendant Kasine Deleston moves for a reduction in his sentence for "extraordinary and compelling" reasons. 18 U.S.C. § 3582(c)(1)(A)(i). The motion seeks the reduction of his 144-month sentence to time served. Deleston asserts that he suffers from Type 2 diabetes, hypertension, other unspecified hyperlipidemia, and obesity, and that these conditions increase his risk of serious complications from Covid-19. In January 2021, for unexplained reasons, Deleston refused an offer to be vaccinated with the Moderna vaccine against Covid-19. Deleston also urges that he is at low risk of recidivism and that he has made substantial progress toward rehabilitation.

    For the reasons that will be explained, the Court concludes that Deleston has not demonstrated extraordinary and compelling circumstances that warrant a reduction of his sentence. The motion will therefore be denied.

    Section 3582(c)(1)(A) of title 18 provides that "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," a court may

reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction." 18 U.S.C.§ 3582(c)(1)(A)(i). The Court has broad discretion and may consider all circumstances in combination and in isolation. See United States v. Brooker, 976 F.3d 228, 237-38 (2d Cir. 2020); accord United States v. Butler, 2021 WL 1166001, at *1 (2d Cir. Mar. 29, 2021) ("District courts have broad discretion in evaluating whether an inmate has presented extraordinary and compelling circumstances for release.") (summary order). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); see also United States v. Roney, 833 Fed. App'x 850, 852 (2d Cir. 2020) ("Prior to reducing a defendant's term of imprisonment, however, a district court must consider the factors set forth in section 3553(a) to the extent that they are applicable.") (summary order; quotation marks omitted).

On July 7, 2020, Deleston submitted a written request for compassionate release to the warden of FCI Allenwood Low, which the warden denied, noting that defendant's medical condition "are not debilitating" and that he was capable of addressing his normal living needs. (Gov't Resp. Ex. B.) The government does not dispute that Deleston has exhausted his administrative remedies.

As noted, Deleston asserts that he suffers from Type 2 diabetes, hypertension or high blood pressure, other unspecified hyperlipidemia and obesity. (Def. Mem. at 3.) Deleston was born on April 9, 1973 and is currently 48 years old. He states that he has suffered from Type 2 diabetes and high blood pressure since 2011. (Id. at 5.) He states that with medical care, his conditions have been managed while in prison. (Id.) According to a website maintained by the Centers for Disease Control ("CDC"), Type 2 diabetes, hypertension or high blood pressure,

and obesity "can make you more likely to get severely ill from COVID-19."[1]  This is in contrast to other conditions, such as pregnancy, where infected persons "are more likely to get severely ill from COVID-19 . . . ."  As to Deleston's obesity, the CDC advises that the risk of severe illness "increases sharply" for persons with an elevated body mass index.

A website maintained by the Bureau of Prisons ("BOP") states that, as of May 3, 2021, no inmates or staff members of Allenwood Low FCI are confirmed positive for Covid-19.[2]  277 inmates and 20 staff members have recovered from Covid-19.  No inmates or staff members of Allenwood Low FCI have died of Covid-19.  As of May 3, 2021, 981 inmates at all Allenwood FCI facilities have completed the Covid-19 vaccination process.[3]

BOP medical records reflect that on January 6, 2021, Deleston refused the Moderna vaccination against Covid-19.  (Gov't Mem. at 3 & Ex. C at 84.)  The government observes that Deleston's BOP medical records do not indicate that the vaccine is medically contraindicated.  (Id.)  Deleston also does not urge that the facility has been unable or unwilling to provide adequate medical care to persons infected with Covid-19.  Courts in this District have concluded that when a defendant refuses the risk-mitigation measure of a Covid-19 vaccination, that choice weighs against an application for release.  See, e.g., United States v. Bullock, 2021 WL 1550424, at *1 (S.D.N.Y. Apr. 20, 2021) (defendant "cannot satisfy his burden of showing that relief is warranted based on the fact that he was offered, and he refused, a COVID-19 vaccine.") (Furman, J.); United States v. Bryant, 2021 WL 738838, at *2 (S.D.N.Y. Feb. 24, 2021) (defendant's "refusal to accept a risk-mitigating measure, even one with a period of delay in its efficacy, is relevant to whether the risk of infection he faces in the MDC is extraordinary

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html
[2] https://www.bop.gov/coronavirus/
[3] https://www.bop.gov/coronavirus/index.jsp

and militates against finding that the degree of risk compels release.") (Swain, J.); United States v. King, 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) ("'In declining vaccination . . . [Defendant] declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction.'") (Seibel, J.) (quoting United States v. Lohmeier, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021)); United States v. Lobo, 2021 WL 603267, at *3 (S.D.N.Y. Feb. 12, 2021) (defendant's vaccine refusal weighs against finding extraordinary and compelling circumstances) (Schofield, J.).

In addition to citing the risk of health complications posed by Covid-19, Deleston urges that he is not a danger to the community and that he has made progress toward rehabilitation during his term of incarceration. (Def. Mem. at 9.) Deleston states that his last conviction for a crime of violence against an individual occurred in 1993, when he was twenty years old. (Id.) He states that he has no record of disciplinary infractions during his incarceration, has completed 49 educational courses, and works as an orderly within the prison. (Id. & Ex. D.) He also notes the loving relationships that he has maintained with family members, including his two children. The Court affords some weight to Deleston's family relationships, the absence of disciplinary infractions, and the productive use of his time in prison, including his work as an orderly and his completion of numerous educational courses.

According to the Bureau of Prisons website, Deleston has an anticipated release date of May 19, 2025.[4] He has been detained since his arrest on January 31, 2015. (PSR at 2.) As of May 3, 2021, Deleston has served approximate 60% of his term of incarceration. "[I]t is entirely within the district court's discretion to consider how much time an inmate has already

---

[4] https://www.bop.gov/inmateloc/

served of his overall sentence when the court is weighing whether a release for extraordinary and compelling circumstances is consistent with the Section 3553(a) factors, such as the need for deterrence and the danger posed to the community by the inmate's release." Butler, 2021 WL 1166001, at *2.

The Court also considers the section 3553(a) factors, including the nature and circumstances of the offense, the defendant's history and characteristics, the seriousness of the offense, respect for the law, just punishment, deterrence, the need to protect the public, and the avoidance of unwarranted sentencing disparities. 18 U.S.C. § 3553(a). On November 20, 2015, Deleston entered a plea of guilty to one count of possessing with intent to distribute a quantity of mixtures containing detectable amounts of cocaine, heroin and marijuana, in violation of 21 U.S.C. § 841(b)(1)(C) and (D), and one count of possessing firearms after having been convicted of a crime punishable by a term of imprisonment exceeding one year, 18 U.S.C. § 922(g). (Docket # 46.) On the firearms count, the indictment specifically charged Deleston with possession of a Glock Model 39 .45 caliber semi-automatic pistol, a Ruger Model SR40C .40 caliber semi-automatic pistol, a Springfield Armory Model XD-40 .40 caliber semi-automatic pistol, a Glock Model 19 9mm caliber semi-automatic pistol, a Smith & Wesson .357 caliber revolver, and a Ruger Model SP101 .357 caliber revolver. (Indictment ¶ 4.) As described in the Presentence Report ("PSR"), officers of the NYPD and the New York State Division of Parole discovered the narcotics and firearms in Deleston's possession in the course of pursuing a different individual for a parole violation. (PSR ¶¶ 9-15.) Deleston urges that there was no indication that he used the recovered firearms, and states that he is serving "a pumped-up sentence . . . ." (Def. Mem. at 9.)

The Court sentenced Deleston principally to 144 months of imprisonment on Count One and 120 months of imprisonment on Count Three, with the sentences to run concurrently, and five years of supervised released. (Docket # 51.) Under the advisory Sentencing Guidelines, Deleston had a total offense level of 30, fell within criminal history category IV and had a Guidelines range of 135 to 168 months. (PSR ¶ 88.) At the sentencing proceeding, the Court noted that Deleston had stored the firearms within an Ottoman footrest that contained a trap door and that the firearms "were possessed in connection with and in furtherance of the drug trafficking offense." (Sentencing Tr. at 24-25.) The Court noted that Deleston was "not a young man" and was 42 years old at the time of sentencing. (Id. at 25.) The Court also reviewed Deleston's past convictions on narcotics charges and charges involving firearm. (Id. at 26.) As summarized in the PSR and recounted by the Court, Deleston's prior convictions included burglary of a dwelling at age 20, a narcotics-possession charge at age 25 where Deleston was also found to possess a loaded shotgun, and a narcotics-possession charge where Deleston was also found to possess live ammunition and $29,635 in cash at age 32, among other offenses. (Id.; PSR ¶¶ 38-45.) The Court also observed that Deleston had a difficult upbringing and that he is devoted to his two children. (Sentencing Tr. at 25-27.)

Reviewing Deleston's circumstances in combination and in isolation, the Court concludes that he has not demonstrated extraordinary and compelling circumstances that warrant a reduction of his sentence. While Deleston's health conditions may make him more likely to become severely ill due to Covid-19, he does not assert that Allenwood Low FCI is unable or unwilling to provide him with adequate medical care. As of the date of this Order, there are no confirmed positive cases at the facility. The facility is also in the process of vaccinating its

inmates, and Deleston has refused vaccination for unexplained reasons. These circumstances weigh against the application.

The section 3553(a) factors also weigh against a reduction of the sentence. More than four years remain on his term of imprisonment. As the Court explained at sentencing, Deleston pleaded guilty to serious crimes and has an extensive criminal history. Deleston now emphasizes that there is no evidence that he "used" any of the firearms that were found in his possession. (Def. Mem. at 9.) But Deleston maintained a small arsenal hidden in his Ottoman, and possessed cocaine, heroin and marijuana in that same apartment, which were intended to be distributed. Further, Deleston was 41 years old at the time of his arrest and already had a substantial history of convictions on drugs and weapons charges. He is currently 48 years old and will be 52 years old on his anticipated release date. A June 2019 report issued by the United States Sentencing Commission concluded that recidivism rates for those convicted of firearms offenses remain high.[5] The report observes: "For offenders 41 to 50 years old at the time of release, the recidivism rate for firearms offenders (60.1%) is more than 20 percentage points higher than the rate for non-firearms offenders (39.6%). A substantial difference in recidivism rates persists for the oldest age group. Nearly 40 percent (39.3%) of firearms offenders released after the age of 50 recidivated, which is almost twice as high as the recidivism rate for non-firearms offenders (20.6%) released after age 50." Section 3553(a) factors including the nature and circumstances of the offense, Deleston's history and characteristics, the seriousness of the offense, respect for law, just punishment, deterrence and the need to protect the public all weigh against Deleston's application.

---

[5] Recidivism Among Federal Firearms Offenders, United States Sentencing Commission, at 22 https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190627_Recidivism_Firearms.pdf (June 2019).

Considering the circumstances in combination and isolation, the Court concludes that Deleston has not demonstrated extraordinary and compelling circumstances that warrant a reduction of his sentence. His application is therefore DENIED. The Clerk is directed to terminate the motion and the related letter-motion. (Docket # 77, 80.)

SO ORDERED.

                                                  P. Kevin Castel
                                            United States District Judge

Dated: New York, New York
        May 3, 2021